## WAREHIME et al. v. VARNEY et al.

### No. 22156.

District Court, N. D. Ohio, E. D.

March 3, 1944.

Supplemental Opinion April 3, 1944.

Paul Walter, of Walter & Haverfield, all of Cleveland, Ohio, for the milk dealers, 34 in number.

Willis L. Hotchkiss, Department of Justice, and Francis B. Kavanagh, Asst. U.S. Atty., both of Cleveland, Ohio, for H. H. Varney et al.

JONES, District Judge.

The motion of the defendants is presented upon three grounds: First, that defendants Varney and Issler are improperly made parties-defendant and that the defendant Marvin Jones was improperly served; second, that the Court has acquired no jurisdiction over the person of Marvin Jones, War Food Administrator, Washington, D. C.; and, third, that venue does not lie in the Northern District of Ohio, Eastern Division, in this proceeding for the reason that Marvin Jones, War Food Administrator, is an inhabitant of the District of Columbia, wherefore this Court has no jurisdiction of this cause.

The suit is one to enjoin the operation of certain provisions of an order or regulation F. D. O. 79 of the War Food Administrator, which provisions are asserted by the plaintiffs to be unconstitutional. Thus it seems reasonable to hold that only those to whom has been delegated the authority, and who are attempting to put the alleged unconstitutional provisions of the order into operation, are essential parties to the suit. The War Food Administrator is an agency of the Government, and although the Administrator promulgated the provisions of the order asserted to be unconstitutional, yet it is the execution of the provisions of the order by the local officials and not the War Food Administrator which is in reality sought to be enjoined; and the propriety of joining the market agent and the milkmarket agent as defendants further is supported by the Food Distribution Order 79 of the War Food Administrator providing that the powers delegated by him to the Director may be by the Director re-delegated to any employee appointed by him, including any or all of

the authority vested in the Director by the War Food Administrator's order.

Under the order, the market agent appears to have been delegated broad powers for the faithful performance of which he is required to give bond.

■ It is my judgment, in the light of modern trends of Government to act through administrative orders and directives, that the citizen seeking relief from alleged invalid power shall be required only to join as defendants those officers who are charged with the duty of executing the administrative orders or directives, and authorized to administer and enforce their provisions. I can see no other method of redress for threatened wrongs which would be within the reach of the citizen, since the only relief provided the producer claiming an exceptional and unreasonable hardship is to file a petition addressed to the Director, who may take such action thereon as he deems appropriate, which action shall be final.

In the view I take of the matter, the War Food Administrator is neither an indispensable nor a necessary party, and this Court not having acquired jurisdiction over his person, the motion to quash service as to him will be sustained; motion to quash and to dismiss in respect of other defendants will be denied.

After having prepared the above statement and disposition, the case of Stark et al. v. Wickard, Secretary of Agriculture, 64 S.Ct. 559, was brought to my attention. This case, it seems to me, from a reading of the majority opinion, furnishes abundant support for the action herein taken.

### Supplemental Opinion.

Since the matters for decision have been so recently heard and the controlling considerations are fresh in our minds, it seems to me that no recital of them here should be necessary, and, in the interest of dispatch toward final decision, the following memorandum is thought to be adequate to an understanding of the reasons for the conclusions reached:

Although this proceeding is not framed as one for declaratory judgment, in many respects it has all of the implications and features of that character of proceeding. It is true that the initial remedy sought is injunction against the enforcement of Orders 79 and 79—3, as they relate to the as-sessment and collection of the charge provided for defraying the expense of the administration in supervising the regulatory measure.

The Second War Powers Act, 50 U.S.C.A. Appendix § 631 et seq., does give the President broad power in respect of shortages in supply of any material or of any facilities for defense, and definitely provides that any person wilfully failing to perform any act required by any rule, regulation, or order, shall be guilty of a misdemeanor and upon conviction be fined not more than $10,000 or imprisoned for not more than one year, or both. This is a very drastic procedure and one which warns the citizen who is affected by any regulation or order drawn thereunder of the consequences of his failure to comply.

When the orders in question were promulgated and put into operation, various agencies throughout the land, including Cleveland, and particularly in October, 1943, held meetings for the purpose of explaining to the handlers what was expected of them under the regulations. In the course of this meeting, the evidence is that those in attendance were very definitely told what the consequences would be of any failure to comply with the orders; and further warning to the public was given through the prepared or quoted published statements as to what machinery of the Government might be brought into play if any dealers failed to respond to the requirements of the orders. There is a difference of opinion as to the manner in which these consequences were foretold, but, nevertheless, the citizen must recognize them as a threat or a warning that he will be required to respond or run the risk of having sanctions applied to him, and probably criminal prosecution.

■ I do not regard the procedural regulations as adequate for the type of case with which we are dealing here. Any citizen asserting a violation of a Constitutional right, by an agency of his Government, certainly should have the right to have judicial determination of that question and not be required to submit to an administrative ruling in which the procedure is dominated by the agency itself. Certainly there is nothing in the War Powers Act or in the orders which give any assurance or promise to a dealer or handler that he will be given an opportunity of having the question of his

Constitutional rights determined before any criminal proceeding is instituted.

The question, then, is when must a citizen assert his Constitutional right and under what circumstances may he challenge as unconstitutional exercise of power these numerous regulations and orders promulgated by delegated authority. Surely he should not be required to await the institution of a criminal proceeding and be required to then defend himself on the basis of his Constitutional challenge to the provisions of the regulations or orders. He must assert his right when the threatened consequences are brought to his attention by those whose duties require them to either report, or recommend, or institute sanctions or criminal proceedings.

Although, generally, the principal is not to be held for the unauthorized acts, threats or statements of his agents, yet where, as here, there appears to be confusing delegation and re-delegation of authority, the statements and threats of agents carrying out the orders of the principal give something more than color to the probable policy and reflect the probable intention and purpose of the principal.

█ While the plaintiffs have not shown any personal and individual threat of enforcing the assessment as to them, yet I do not think the dealer is required to await personal threat of irreparable injury by enforcement before acting for his own protection, or otherwise run the risk of sanctions or criminal procedure. Certainly the complainants' businesses would be destroyed and irreparable injury done if sanctions were to be resorted to and prosecutions instituted before the complainants could have their asserted Constitutional rights determined.

Summing up the facts, upon the basis of the relation to the imminence of threatened injury by enforcement of invalid provisions of the orders, it is my judgment that a case has been made out calling for the exercise of the equity powers of the Court. Since a controversial issue thus has been raised and resolved in the complainants' favor respecting the impending irreparable injury to them, it follows that the challenge to the Constitutional validity of those provisions becomes a matter properly and necessarily for consideration and decision by the Court, if the injunctive process is to be invoked and granted.

Since already I have held by memorandum filed March 3rd that this Court has jurisdiction and power to entertain the case and to inquire into complainants' claim to invalid exercise of power, I pass to the single legal question remaining, that is, the validity of the provisions of Orders 79 and 79—3 respecting the assessment sought to be imposed upon milk handlers or dealers.

These provisions certainly present a novel departure from established practice in Constitutional government, and as well in respect of other like agencies for the control of food and prices. This is not to say that any effort to make agencies of the Government self-sustaining is to be judicially discouraged, but the mandate for exacting financial levies from the citizen is one Constitutionally committed to the Congress, and it is gravely to be doubted whether Congress could delegate such power, although in this situation it has not done or attempted to do so.

If the War Food Administration has the power to levy an assessment for the cost of supervising the milk handlers or dealers, there would seem to be no limitation upon the power of any of the numerous Government agencies and administrators to impose such financial burden upon any group by the simple expedient of a regulation or a directive. In my view, this question turns upon the authority and power of the War Food Administrator, by regulation or order, validly to assess the milk dealers for their proportionate share of the cost and expense of maintaining the supervision provided by the regulations.

There is nothing in the War Powers Act which grants to the President, or any agency set up by him, the power to assess the milk dealers any amount; nor is there anything in the War Powers Act that by the slightest implication endeavors to grant such power. Such unlimited power in an agency or administrator, if permitted to levy an assessment for costs and expenses of administration, as in this case, would be destructive of Constitutional government.

█ It is my considered judgment that the provisions of the orders in respect of the levying of an assessment, and the requiring of its payment, are without Constitutional or statutory authority, and their enforcement will be enjoined.

Reference is made to the case of Stark v. Wickard, Secretary of Agriculture, 64 S.Ct. 559, which I think justifies and supports the action here taken; also, reference is made to the case of O'Neal v. United States of America, 6 Cir., 140 F.2d 908, wherein the question of limitation upon the powers of the President and agencies under his authority is discussed.

One thing more should be said, in view of the stipulation made by counsel for the War Food Administration and the Department of Justice that no prosecutions would be commenced against the complainant handlers because of their failure to pay assessments provided by the orders, until the validity of the assessment provision has been sustained by an appellate court. It should be understood that the action taken here in no way affects the validity of other provisions of the orders, and is not to be construed as an excuse or justification for failure to comply with such other provisions.